## UNION TRACTION COMPANY v. WILLIAM GWALTNEY

Middle Section. August 29, 1925.

Certiorari denied by Supreme Court February 13, 1926.

1. **Appeal and error. Weight of evidence is for the jury.**
The verdict of the jury will not be disturbed by the appellate court if there is any substantial evidence to support the verdict.

2. **Appeal and error. Questions covered by court's instructions are not subject to review unless exceptions are taken to the instructions.**
Where the court instructed the jury as a matter of law they should find certain facts and no exceptions were taken to the instructions those points are not open to review on appeal.

3. **Easements. Owner of right-of-way cannot remove improvements belonging to owner of fee unless they interfere with the use of the right-of-way.**
The owner of the right-of-way has the right to- use soil, rock and gravel from the right-of-way so much as may be needed for the purpose of constructing and maintaining the road and may carry same from one point to another on the road, but it cannot remove improvements belonging to the owner of the fee, so long as they do not interfere with the use of the right-of-way for the purpose for which it is intended.

4. **Damages. Cost of restoration is just measure of damages for wrongfully destroying an improvement.**
Where plaintiff's wall was wrongfully destroyed the cost of replacing it was held to be a fair measure of damages.

Appeal in Error from Circuit Court, Sumner County; Hon. J. D. G. Morton, Judge.

Affirmed.

Bell and Hibbitts, of Nashville, and Baskerville and McGlothlin, of Gallatin, for plaintiff in error.

Collier and Denning, of Gallatin, for defendant in error.

HEISKELL, J. William Gwaltney, the plaintiff below, brought suit against the Union Traction Co. in the circuit court of Sumner county to recover damages for taking down a rock fence along the defendant's right-of-way in front of plaintiff's home.

It is alleged in the declaration that the plaintiff is the owner of a large farm, upon which he resides, in the Fifth Civil District of Sumner county, Tennessee, fronting upon the Nashville and Gallatin Turnpike, that his residence is located south of the pike, and that he has a large lawn with many trees upon it.

That the defendant is a corporation, duly chartered, and that it owns and operates an electric railway through Davisson and Sumner counties, and that said railway is located on plaintiff's farm.

That plaintiff had a valuable stone wall or fence on his premises, running parallel with the pike and defendant's track, and that on the——day of July, 1923, the defendant wrongfully, unlawfully and without any right or authority tore down said stone fence and converted same to its own use, and that in so doing it caused plaintiff to suffer great loss and damage; that the value of the material in said fence was $——, and that it was also a very ornamental improvement and appurtenance to his premises and that the removal thereof disfigured his premises and decreased the market value thereof, and that the tearing down and taking of said rock fence was a wilful, wanton and unlawful trespass, and the plaintiff alleges that his damages, both compensatory and punitive, amount to the sum of five thousand dollars ($5,000) and a jury is demanded.

A plea of not guilty of the matters and things charged in the plaintiff's declaration was interposed by the defendant; and there was an additional plea that at the time of the things complained of by the plaintiff, in his declaration, and in fact since February 28, 1911, the defendant and its predecessors in title owned a strip of land fifty feet wide and running back south from the edge of the Gallatin and Nashville Pike fifty feet and extending across the entire length of the land described by plaintiff in his declaration, and that said strip of land was occupied and used and in possession of the defendant at the time the farm described in plaintiff's declaration was purchased by him and that said strip of land was then being used by the defendant as a right-of-way for its railway line and track, that the rock fence described in plaintiff's declaration was located

on said strip of land and that said rock fence was taken down and was being used by the defendant in the necessary repair and maintenance of its road-bed, it having acquired the right to so use said rock by the conveyance to it of said right-of-way.

To a large extent the facts are uncontroverted. On the 28th of February, 1911, E. S. Gardner, the then owner of the farm later acquired by the plaintiff, conveyed to H. H. Mayberry or assigns, a right-of-way across said farm, as above shown, by the following deed:

"Gardner, E. S.⎱
To                    ⎰
H. H. Mayberry⎰

### Deed.

For and in consideration of the benefits and advantages to accrue to me from the construction and operation of an electric car line to be built by H. H. Mayberry or his assigns, and the sum of one dollars, to me in hand paid by said H. H. Mayberry, I do hereby give, grant, assign and convey unto the said H. H. Mayberry or his assigns a right-of-way on which to contsruct and operate an electric line upon and through the tract of land owned by him in the 5th Civil District of Sumner county, Tennessee, said tract containing——acres, more or less, and bounded as follows: On the north by L. & N. R. R. & Gallatin pike, on the east by the lands of Jas. C. Harris, on the south by lands of William Jones & Fitzpatrick, on the west by the lands of Roy J. Pierce. Said right-of-way to consist of a strip running through said tract parallel with Gallatin pike, and extending fifty feet from south boundary line of said pike, as the same is now located by said H. H. Mayberry's engineers, reference being hereby made to the survey and maps of said survey for definite description of said line. It is also agreed and understood, (1) station will be located at my front gate, (2) you will remove and reset my stone gate posts and stone approaches thereto to my satisfaction, (3) you will fence south side of railway across my lawn and paddocks numbers 9, 10, 17 with a fifty-eight inch Elwood diamond mesh wire fence, set on round locust posts 5 inches thick at small end, set posts 3 feet in earth and 10 feet apart in fence row, saw square on tops (4) put in and maintain stock proof, cattle gaps at division and outside fences when your line runs through paddock and where your southern boundary is unfenced, to-wit, paddock No. 19 and the Franklin land laying southwest across a county lane. In entering my property it is permitted to swing around L. & N. tracks and you shall reach my pike from as soon as proper en-

gineering will permit, provided it does so on reaching division fences between paddocks 17 and 19.

It is expressly understood that the right-of-way is not given for a steam or any otherwise equipped road than an electric trolley line, and in the event it at any time should become other than electric trolley line this agreement is null and void.''

An electric railway was constructed over this right-of-way and operation began in 1913. The defendant is now owner of same, and plaintiff is now owner of the Gardner farm by purchase in March, 1920.

At the time said right-of-way was deeded to Mayberry there was a stone wall or fence in front of the Gardner farm, running parallel with the south side of the Nashville and Gallatin pike for a distance of 841 feet. This wall had been constructed by Gardner about twenty-seven years before.

Thus far there is no dispute about the facts. As to what took place at the time the wall was taken down by the defendant there is a conflict of testimony. The defendant insists that before the wall was taken down the plaintiff was notified and agreed that the wall might be taken down and claimed only the value of the stone. The plaintiff denies this and insists that he claimed the right to have the wall remain, and that the defendant removed the wall so hurriedly that he, plaintiff, had no time nor opportunity to stop it. This conflicting testimony raised the question whether or not plaintiff was estopped to claim more than the value of the stone in said wall. This question we think is settled by the verdict, inasmuch as there is evidence enough to support a verdict either way and the judge charged the jury as follows:

"Gentlemen of the Jury, I charge you that it was the duty of the plaintiff, when approached by the defendant's agent about the removal of the fence or wall, to assert his claim thereto and to object to its removal or destruction, and that if he failed to do so at the time, but assented thereto, or by his action led the defendant to believe that he assented thereto he is now estopped to claim damages on account of said removal of said wall and cannot in this cause recover for the taking down of said fence or wall, but could only recover the market value for the material therein.''

It is contended for the plaintiff that the said wall was not on the right-of-way of the defendant and, therefore, that the defendant had not even the pretext of right-of-way ownership for tearing it down, but this again seems to be precluded by the verdict. The judge charged the jury, "that as a matter of law, from the undisputed facts in the case, the wall in question was located on the strip of land conveyed as a right-of-way . . . . '' The plaintiff prays no appeal

and assigns no error. Therefore, no objection can be taken now to the verdict as to these two questions. It must be taken as settled that the plaintiff was not estopped to claim more than the value of the rock in the wall and that the wall was on the defendant's right-of-way.

This leaves the case to be considered with these questions eliminated. The defendant claims the ownership of the wall and the right to take down at any time, and to use the rock, by virtue of its ownership of the right-of-way. The plaintiff insists that it is his right to have the wall remain intact until such time as it interferes with the use of the right-of-way.

The jury found in favor of the plaintiff and assessed his damages at the cost of rebuilding the wall, which they fixed at $1728. The defendant has appealed and filed ten assignments of error, but as counsel for defendant says these can be grouped under three headings, we will omit the assignments of error and discuss the three propositions.

"First. The defendant, under the terms of the deed conveying to it the right-of-way along and over the farm subsequently acquired by the plaintiff, became the owner of the rock fence to the extent that it needed said rock fence or desired to use said rock fence in the repair and maintenance of its roadbed."

It is true the owner of the right-of-way has the right to use soil, rock and gravel from the right-of-way so much as may be needed for the purpose of constructing and maintaining the road and may carry same from one point to another on the road, but it cannot remove improvements belonging to the owner of the fee, so long as they do not interfere with the use of the right-of-way for the purpose for which it is intended. Railroad v. Donovan, 104 Tenn., 466.

The owner of the fee has the right to make any use of the land embraced in the right-of-way which does not interfere with the use of same for railroad purposes. Railway Co. v. Telford's Extr., 89 Tenn., 292.

Owner may cut growing timber from land covered by an easement. Power Co. v. Rust, 8 Higgins, 368.

It is clear from the proof that the wall did not interfere in any way with the operation of defendant's electric road. The reason for tearing down the wall was not that the defendant company needed stone for ballast, but even if this was the reason the defendant did not have the right to do so. The wall was an improvement belonging to the plaintiff, which he had the right to have remain where it was so long as it did not interfere with defendant's use of its easement.

It is argued for the defendant that the fact that the deed of Gardner conveying the right-of-way stipulated for the wire fence

south of the right-of-way as part of the consideration, shows that the grantor intended to relinquish all interest in said rock fence. On the other hand plaintiff insists that the stipulation in said Gardner deed, "you will remove and reset my stone gate posts and stone approaches thereto to my satisfaction," is an indication that said grantor intended the wall to remain. That it would have been foolish to stipulate for the preservation of the stone gate posts and the approaches if he did not intend the wall, with which the approaches connected, to remain as a handsome effect, lending dignity and beauty to his premises.

As between these conflicting contentions drawn from the deed of Gardner, the latter in favor of the plaintiff is entitled to more weight than the other.

The defendant's second proposition is:

> "That if it should be held by the court that the defendant, by reason of the deed conveying to its predecessor, in title said right-of-way, did not become the owner of said rock fence, with the right to use it in the repair and maintenance of its roadbed, that then, under the facts of this case, the defendant would only be liable to the plaintiff for the actual market value of the rock in said fence."

Under this head it is said that plaintiff allowed the wall to become broken and did not repair it. The proof shows an automobile knocked down a small place. This cannot work an abandonment or estoppel. The rest of brief for defendant, under this proposition, is addressed to the contention that plaintiff is estopped to claim anything but the value of the rock by not claiming more when notified by defendant of its intention to tear down the wall.

As stated above, there is a conflict of evidence on this point, enough to support a verdict either way. The trial judge gave the charge requested by defendant and the jury found for the plaintiff. We cannot disturb their finding on this point.

Defendant's third proposition is based upon the contention that the measure of damages adopted by the trial court that is the cost of replacing the wall is not the correct measure of damages, and even if it is that the jury miscalculated to the extent of $180 the cost of the foundation.

As to the item of $180 for the foundation, the defendant refers to the testimony of Baker, (Tr. 53) to show that the foundation was still in place, but after saying this, the witness says: "The foundation is all right. It was there when I was there. Whether it has been taken out now, I don't know."

The plaintiff testifies that a good portion of said foundation and he thinks all of it, has been thrown out. In this state of the proof the verdict would settle that question.

As to the cost of rebuilding the wall, as the measure of damages; if the right of the plaintiff was to have the wall remain, we do not see what measure of damages more favorable to the defendant could be adopted. If any improvement is wrongfully destroyed the mildest measure of damages is the cost of restoration. Railway Co. v. Minton, 7 Higgins, 81; Walton-McDowell Co. v. Jackson, 5 Higgins, 324.

The result is all the assignments of error are overruled and the judgment of the lower court is affirmed.

Faw, P. J., and Crownover, J., concur.